UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KENNETH LOCKE,                                          07-CV-03226

                              Plaintiff.


              -against-


ST. AUGUSTINE'S EPISCOPAL CHURCH              (Azrack, M.J.)
AND HOWARD K. WILLIAMS,

                              Defendants.
-------------------------------------------------------------X


**DEFENDANTS'  MOTION FOR SUMMARY
JUDGMENT, PURSUANT TO FRCP RULE 56**



Respectfully submitted,

GERALD DOUGLAS
Douglas & Associates, P.C.
Attorneys for Defendants
4517 Avenue D
Brooklyn, New York 11203
(718) 451-4900


1

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………...……………...…3

STATEMENT OF FACTS…………………………………………………………..3

STANDARD OF REVIEW FOR SUMMARY JUDGMENT…………………………….5

STANDARD OF REVIEW FOR SUBJECT MATTER
JURISDICTION UNDER THE FLSA……………………………………………………6

ARGUMENT………………………………………………………………..……7

       Summary Judgment Must Be Granted And The Complaint
       Dismissed, Because The Court Lacks Subject Matter Jurisdiction
       Pursuant to 28 U.S.C. § 1331…………………………………………………...…7

       A.    St. Augustine's Episcopal Church Is Not A
             Covered Enterprise Under the FLSA……………………………………..…7

       B.    Plaintiff Is Not a Covered Individual Under The FLSA……………………..………9

       C.    The United States Department of Labor Has Already Determined
             That The FLSA Does Not Apply To Churches Such As
             St. Augustine's Or To Church Custodians Such As Mr. Locke……………….11

       D.    This Court Should Decline To Exercise Supplemental
             Jurisdiction Over The Remaining State Law Claims……………………………..13

CONCLUSION…………………………………………………………………..14

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

## PRELIMINARY STATEMENT

Defendants St. Augustine's Episcopal Church and Reverend Howard K. Williams, bring this Motion for Summary Judgment pursuant to FRCP Rule 56. Plaintiff cannot prevail and the Complaint must be dismissed because this Court lacks subject matter jurisdiction to adjudicate this matter, as plaintiff has asserted federal question jurisdiction pursuant to the Fair Labor Standards Act ("FLSA" or the "Act"), 28 U.S.C. § 201 et. seq, a federal law.

However, under the FLSA, plaintiff must make out a prima facie case that either the FLSA is applicable to the employer under an enterprise liability theory, or that the employee is individually covered on account of the nature of the activities he is engaged in. Yet, plaintiff cannot demonstrate that St. Augustine's Episcopal Church is an enterprise within the meaning of the FLSA, nor can they show that Kenneth Locke, the church's custodian, was substantially engaged in activities covered by the FLSA.

## STATEMENT OF FACTS

St. Augustine's Episcopal Church is an average sized congregational church located in East Flatbush, Brooklyn. The church is an independently incorporated not-for-profit entity, with its own board of directors,  commonly known as the Vestry. The function and purpose of the church is primarily evangelistic, and the large majority of the church's income is derived from charitable contributions donated by its members during weekly church services. The church also receives a small portion of its income from donations by individuals who use the church's facilities for funerals, baby and wedding showers and other social events. The church does not advertise or in engage in marketing campaigns to procure customers to use its facilities. Most of the individuals who use the facilities are either members of the church, or their friends or family members who have heard about the church's hall space through word of mouth. The church is

3

not in the business of producing any goods for sale. It also does not operate any schools, day care centers or other commercial ventures. It is primarily a religious and evangelistic organization.

In 1982, Plaintiff Kenneth Locke was hired by the then rector of St. Augustine's Episcopal Church, Reverend Lloyd Henry, whom he had known from his homeland of Belize. Mr. Locke was hired as a non-skilled laborer to assist the church in setting up for church services and cleaning up afterward. Soon thereafter, Mr. Locke began living on the church premises in a two bedroom apartment. For the first few years of his employment, Mr. Locke was not asked to contribute any money toward his use and occupancy of the apartment. In 1986, Mr. Locke, at the church board's request, began contributing $250 a month toward his use and occupancy. By this time, he was the church's official custodian and caretaker. In addition to his main duties as custodian, Mr. Locke would on occasion 1) pick up church vestments at the dry-cleaners across the street from the church, 2) purchase cleaning supplies from the hardware store across the street, 3) volunteer to help the church secretaries copy church bulletin covers; all in furtherance of church activities.

In 2001, Reverend Howard K. Williams became the Rector at St. Augustine's. Shortly thereafter, plaintiff's salary was raised to $625.00 bi-weekly for his services. Additionally, plaintiff continued to enjoy the benefit of a two-bedroom apartment at a monthly contribution of $250.00. Plaintiff was also paid an additional $50.00 whenever he cleaned up after a funeral or other social event that was held in the church hall, even if the cleaning occurred during his regularly scheduled work hours.

On September 30, 2005, plaintiff requested medical leave until November 7, 2005, which was granted. He never told Reverend Williams or the Church Vestry about the nature of his illness or that he would need significant recuperative time. He never told the church that his

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

illness would prevent him from working. However, on October 28, 2005, plaintiff again requested leave until December 5, 2005, and the same was granted. He renewed his requested for leave in early December for time off until February 6, 2006—also granted. On February 6, 2006, plaintiff once again requested an extension of leave until March 13, 2006. By now, St. Augustine's determined it could no longer afford to wait for Mr. Locke and decided instead to let him go. The church proposed a severance package, as he had been employed with the church for over 22 years.

Mr. Locke refused the church's offer of 20 weeks of severance pay, and instead asked for 44 weeks of severance pay. After consulting with two different lawyers regarding his legal options, in March of 2006, Mr. Locke was prepared to accept the church's severance package offer-- provided that he received more time to remain in his apartment. Up until that point, none of the discussions he or any of his lawyers had with St. Augustine's contemplated a lawsuit for unpaid wages or violations of the FLSA. Despite his termination, Mr. Locke remained in the church's apartment for a whole year, without paying any use and occupancy. During this period he never accused the church of having violated his labor rights.  He was finally forced to leave the premises  in February 2007.

In August of 2007, after meeting with an attorney from the Legal Aid Society, Mr. Locke filed suit against these defendants in the United Sates Eastern District Court, alleging violations of the FLSA and New York State's Labor Law.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. A fact is material if it might

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

significantly affect the outcome of the suit under governing law. <u>Anderson v. Liberty</u>

<u>Lobby, Inc</u>., 477 U.S. 242, 247,248 (1986).

　　　The party moving for summary judgment bears the burden of demonstrating the absence

of any genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325

(1986). In ruling on a motion for summary judgment, a court must view the facts in the light

most favorable to the nonmoving party, and resolve any ambiguities and draw all reasonable

inferences against the moving party. <u>Anderson</u> 477 U.S. at 255. Once the moving party has met

its burden, the non-moving party must set forth evidence of specific facts showing the existence

of a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 242, 248-250.

　　　For a party to successfully defend against a summary judgment motion, he must

demonstrate "specific facts showing that a genuine issue for trial exists…mere conclusory

allegations, speculation or conjecture will not avail a party resisting summary judgment."

<u>Fariello v. Campbell</u>, 860 F. Supp. 54, 63 (E.D.N.Y. 1994).


**STANDARD OF REVIEW FOR**
**SUBJECT MATTER JURISDICTION UNDER THE FLSA**


　　　As the FLSA is a federal law, the interpretation of the Act is a federal question. Whether

the FLSA is applicable in the instant case, shall determine whether this Court has subject matter

jurisdiction to adjudicate the claims now pending before the court. The burden of proving

jurisdictional prerequisites lies with the party seeking the exercise of jurisdiction in his favor.

<u>Kheel v. Port of New York Authority</u>, 457 F.2d 46, 48 9 (2d. Cir. 1997).

　　　Under the FLSA, the jurisdictional prerequisites that the plaintiff must prove are that 1)

his employer was an "enterprise" subject to the requirements of the FLSA or alternatively that 2)

irrespective of the employer's enterprise status, the plaintiff employee himself was engaged in

6

commerce or the production of goods for commerce. See 29 U.S.C. § 207(a)(1)(1999).

## ARGUMENT

### Summary Judgment Must Be Granted And
### The Complaint Dismissed, Because The Court
### Lacks Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331

Based on the facts alleged by the plaintiff, he cannot show that the Court has subject matter jurisdiction over these claims, as he has asserted federal question jurisdiction based on claims brought under the FLSA. To bring an FLSA claim, a plaintiff must first demonstrate that the FLSA is applicable to his employer under an "enterprise" coverage theory, or that the plaintiff himself is an individually covered employee on account of having engaged in substantial interstate commerce in the course of his employment, or having produced goods for interstate commerce. In the case presently at bar, plaintiff is unable to prove these jurisdictional prerequisites because St. Augustine's Episcopal Church is not a covered enterprise within the meaning of the FLSA, and Kenneth Locke was not engaged in the type of interstate commerce activities during his employment as the church's custodian that would make him individually covered  under the statute.

### A.     St. Augustine's Episcopal Church Is Not A
### Covered Enterprise Under the FLSA

Pursuant to the enterprise theory of FLSA coverage, all non-exempt employees are covered by the protections of the FLSA if they are employed by an enterprise "engaged in commerce or the production of goods for commerce, or that has [at least two] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and…whose annual gross volume of sales made or

7

business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i,ii)(1999).

In the instant case, St. Augustine's Episcopal Church clearly does not meet the standard imposed for enterprise liability. The church's activities are primarily evangelistic in nature and not commercial. While in any given year, the church may have income that is over $500,000, almost 99% of that income is derived from charitable contributions made by its members during church services. Less than 1% of that income is derived from occasional short term rentals of the church's fellowship hall. In addition, the charitable income the church receives is not used to support the church's incidental rental activities. If anything, it is just the opposite ---the rental income received by the church helps the church fulfill its spiritual mission. Other than charitable contributions and its rental income, the church has no other sources of income.

As St. Augustine's has non-profit charitable status, the church would generally not be considered an "enterprise" under the Act. Yet, the Act could still be applicable to St. Augustine's if its activities "serve the general public in competition with ordinary commercial enterprises". Tony and Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 299 (1985). However, even the church's rentals of its fellowship hall lack the characteristics of interstate commerce. The church only rents to local groups, who are generally either members of the church or connected to members of the church. The church does not advertise its fellowship hall and does not seek to compete with commercial establishments that provide space for functions. Moreover, those rental activities do not even approach the requisite $500,000 threshold even if St. Augustine's was in competition with bona fide businesses.

Furthermore, the church does not produce any goods for commerce and *none* of its employees can be said to have been engaged in the handling, selling or working on goods or

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

materials that have been moved in or produced for commerce. Even if plaintiff could successfully argue that he himself was engaged in interstate commerce, the statute requires that *at least two* of the Church's employees must be engaged in commerce for enterprise coverage to attach. However, just like Mr. Locke, none of the other church employees (all of who are either secretaries or ministers) were engaged in interstate commerce. Unlike some prominent mega-churches, St. Augustine's does not even sell books, audio or video tapes. Such activity would have clearly satisfied the standards for interstate commerce and enterprise liability, but it is absent here.

Taken together, these factors support a finding that St. Augustine's Episcopal Church is not an enterprise within the meaning of the Act, and therefore does not meet the test for enterprise liability; the first prerequisite for federal question subject matter jurisdiction under the FLSA.

### B.      Plaintiff Is Not A Covered Individual Under The FLSA

With respect to individual or "traditional" coverage under the FLSA, an employee is considered covered by the Act if he has "engaged in commerce" or "engaged in the production of goods for commerce". 29 U.S.C. § 207(a)(1)(1999). To be engaged in commerce, a 'substantial part of the employee's work must be related to interstate commerce...the test under this present act....is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be part of it." Boekemeier v. Fourth Universalist Society in the City of New York, et al., 86 F. Supp 2d 280 (S.D.N.Y. 2000).

Boekemeier is the one case decided in this circuit with a very similar factual scenario to the instant case. In that case, plaintiff custodian asserted enterprise liability and individual

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

coverage under the FLSA. The Southern District Court of New York declined to grant summary judgment to defendants on either theory. The Court found that the Universalist Church's significant average yearly rental income of $467,104 compared to its average yearly charitable contributions of $49,807 supported the theory that a factual determination needed to be made as to whether the church was really utilizing its charitable contributions to support its larger rental business. In addition, the Universalist Church also employed several individuals who were involved in an extensive marketing campaign to solicit interstate special event renters. Furthermore, plaintiff himself on numerous occasions ordered supplies directly from out of state vendors, thus satisfying the requirement of having handled goods moving in interstate commerce. As a result, the Court declined to grant summary judgment on the issue of individual coverage.

However, the facts in the case at bar are *completely distinguishable* from Boekemeier. While the Universalist Church's rental income to charitable contribution income ratio was almost 10 to1, St. Augustine's is the exact opposite; their rental income is dwarfed by their charitable income by a factor of almost 1 to 100, leaving no factual question as to whether the church would qualify for enterprise coverage--it clearly does not. As such, summary judgment on the issue of enterprise liability is wholly appropriate in our case.

Similarly, while the plaintiff in Boekemeier was able to assert a valid claim for individual coverage on account of having ordered supplies from out of state vendors, Mr. Locke is not in the same position. He too bought cleaning supplies. However, he bought them from the local hardware store across the street--after those supplies had reached their final resting place, and were no longer moving in the flow of interstate commerce. Yet, these occasions when Mr. Locke bought supplies from even local vendors do not constitute a substantial portion of his actual work

10

activities, such that it could be said that Mr. Locke's activities in this area were so closely related to interstate commerce as to be part of it. Rather, the great majority of his day to day job function was spent on custodial tasks: vacuuming, mopping, shoveling snow, taking out trash, etc. These tasks represented the true nature of his employment.

Once again, these factors, taken together, support a finding that Mr. Locke is not a covered employee under the FLSA. Therefore plaintiff has failed to establish the other jurisdictional prerequisite for subject matter jurisdiction under the FLSA. As such, Defendant's motion for summary judgment on jurisdictional grounds should be granted.

> **C.    The United States Department Of Labor Has Already Determined
>         That The FLSA Does Not Apply To Churches Such As
>         St. Augustine's Or To Church Custodians Such As Mr. Locke.**

The Wage and Hour Division of the U.S. Department of Labor's Employment Standards Administration is responsible for administering and enforcing the FLSA. Like other federal enforcement agencies, it issues guidance to parties in the form of Advisory Opinions. On September 23, 2005, the Wage and Hour Division issued an opinion regarding a local church and its employees. Formal Advisory Opinion Letter, U.S. Department of Labor, Employment and Standards Administration, Wage and Hour Division FLSA 2005-12NA ( 2005), available at http://www.dol.gov/esa/whd/opinion/FLSANA/2005/2005_09_23_12NA_FLSA.pdf. (See Exhibit A attached herein)

In its Opinion Letter, the Wage and Hour Division (WHD) made it clear that "enterprise coverage does not apply to a private, non-profit enterprise where the eleemosynary, religious or educational activities of the non-profit enterprise are not in substantial competition with other businesses, unless it is operated in conjunction with a hospital, a residential care facility, a school or commercial enterprise operated for a business purpose."

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

St. Augustine's Episcopal Church is exactly the type of not for profit institution that the Opinion Letter describes. Almost 99% of its revenue is derived from charitable giving. As less than 1% of its total revenue is derived from renting out its church hall, coupled with the fact that the church does not advertise that service to the community, St. Augustine's cannot be said to be in substantial competition with any business enterprise. As such, the policy implications of the FLSA does not extend to this church.

It is also important to remember that while St. Augustine's is affiliated with the worldwide body of Episcopalian churches, St. Augustine's itself is a discreet, independently incorporated, self-governing body, and should be treated as such. Plaintiff has sued St. Augustine's as an independent juridical person, not the Episcopal Center, which is the worldwide church confederation. Therefore, plaintiff cannot attempt to satisfy the $500,000 jurisdictional threshold for enterprise liability by aggregating the revenue streams of other Episcopalian churches with that of St. Augustine's.

Furthermore, a Wage and Hour Division Opinion Letter dated November 4, 1983 states, "[g]enerally, enterprise coverage is not applicable to employees engaged exclusively in the operation of a church or synagogue since their activities are not performed for a "business purpose" within the meaning of the FLSA." Moreover, a separate Wage and Hour Opinion letter from July 23, 1975 states , "Coverage would not be applicable to church employees, such as a janitor, engaged exclusively in the operation of the church since their activities are not performed for a business purpose."

Yet, it is undisputed that although an employee may work for an organization that does not meet the test for enterprise coverage, the employee may still be individually covered by the FLSA if they are engaged in interstate commerce, the production of goods for commerce or

12

activities closely related and directly essential to the production of goods for commerce. However, in their September 23, 2005 Opinion Letter, the Wage and Hour Division stated, "[a]s a practical matter, the WHD will not assert that an employee who on isolated occasions spends an insubstantial amount of time performing individually covered work is individually covered by the FLSA". That is exactly the case with Mr. Locke. Defendants will admit that on occasion Mr. Locke may have mailed a letter at the post office on behalf of the church, however such mailings were infrequent and sporadic at best, and were never in furtherance of interstate commerce or the production of goods for commerce, as the church itself is not engaged in any such activity.

Additionally, The November 4, 1983 Opinion Letter states more specifically, [g]enerally custodians would not be covered under FLSA on an individual basis unless the employees regularly clean offices of the church or synagogue where goods are regularly produced for shipment across state lines." Mr. Locke can make no such claim. All of the spaces he cleaned were used solely for religious or evangelistic purposes. The church has never had any sectors which engage in the production of goods for commerce.

A clear reading of the guidance given by the Wage and Hour Division in the last 35 years reveals why there is such a dearth of judicially issued opinions on the applicability of the FLSA to solely religious institutions and their employees. The case law is scant on this particular point because the WHD has made it clear that the FLSA does not contemplate churches that do not engage in interstate commerce or their employees whose job functions are not substantially related to interstate commerce. Obviously then, if Mr. Locke is seeking to avail himself of the federal court system, the FLSA is not an option intended for him. As he has articulated no other grounds for federal jurisdiction besides the FLSA in his Complaint, this Court lacks the subject

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

matter jurisdiction necessary to adjudicate his lawsuit. As a result, Defendant's summary

judgment motion must be granted.

> **D.     This Court Should Decline to Exercise Supplemental
> Jurisdiction Over The Remaining State Law Claims**

Should this Court determine that summary judgment is appropriate concerning the federal

claims brought under the FLSA, it will then have discretion as to how to treat the reaming claims

brought by plaintiff under New York Labor Law. These state law claims were joined to this

lawsuit by invoking supplemental jurisdiction under 28 U.S.C. § 1367, based on the theory that
they were part of the same case and controversy as the federal claims.

However, as the nature of the remaining claims fall under New York Labor Law, it would

be more appropriate for those claims to be reviewed by a state court that is more familiar with

the provisions of New York labor Law. "In general, where the federal claims are

dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp.,

138 F.3d 46, 57 (2d Cir. 1998).

Furthermore, where it is determined that deciding the state law claims would entail

resolving additional issues of fact, it is all the more appropriate for a court to decline to exercise

supplemental jurisdiction. New York Mercantile Exchange v. Intercontinental Exchange, Inc.,

497 F.3d 109 (2d Cir. 2007). Such is the case before us now. Because New York Labor Law has

special provisions regarding residential/live-in workers such as Mr. Locke, should this Court

decide to exercise jurisdiction over the state law claims, it would then be obligated to make

additional factual determinations—determinations that it would otherwise not have to make if it

were only deciding claims under the FLSA. As such, this Court should follow the standard

adopted by the Second Circuit Court, and decline to exercise supplemental jurisdiction as well.

14

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

**CONCLUSION**

For all of the foregoing reasons, Defendant's Motion for Summary Judgment should be granted in its entirety, and the Complaint dismissed.

Dated:       July 22, 2009
                Brooklyn, NY

                                        DOUGLAS & ASSOCIATES, P.C.

                        By:      _____
                                 Gerald Peter Douglas (GPD0963)
                                 Attorney for Defendants
                                 4517 Avenue D
                                 Brooklyn, NY 11203
                                 (718) 451-4900

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com



U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

September 23 2005                                                    FLSA2005-12NA

Dear *Name*,

This is in response to your June 7, 2005 letter regarding the applicability of the overtime provisions of
the Fair Labor Standards Act (FLSA) to a local church and the calculation of overtime for an
employee who holds both a salaried and hourly position. It is our opinion that the FLSA does not
cover the church and the employees in question.

The Wage and Hour Division (WHD) of the Department of Labor administers and enforces the FLSA,
which is the Federal law of most general application concerning wages and hours of work. This law
requires that employers pay all covered and nonexempt employees not less than the minimum wage,
$5.15 an hour, for all hours worked and time and a half overtime pay for all hours worked over 40 in
a workweek. The FLSA applies to all employees of covered "enterprises"—*enterprise coverage*—and
to employees individually engaged in interstate commerce—*individual coverage*.

As described in your letter, the church is a non-profit organization under section 501(c)(3) of the
Internal Revenue Code. The church employs a person in a full-time salaried position who also works
a second job for the church as an hourly employee. In a conversation with a member of the Wage
and Hour Division staff, you stated that no employee of the church is engaged in interstate or
commercial activities. You also asserted that the church does not receive financial support through
any commercial ventures.

Pursuant to sections 3(r) and (s) of the FLSA (copies enclosed), enterprise coverage applies to the
following employers:

*   Federal, state or local government agencies;
*   Hospitals (establishments primarily engaged in offering medical and surgical services to
    patients who generally remain in the establishment overnight, several days, or for extended
    periods);
*   Residential care facilities primarily engaged in (50% or more of income attributable to) the
    care of the sick, the aged, the mentally ill or developmentally disabled who live on the
    premises;
*   Preschools, elementary and secondary schools (as determined under state law) and
    colleges; and
*   Enterprises with a business purpose with an annual dollar volume of sales or receipts of
    $500,000 or more and at least two employees engaged in commerce or the production of
    goods for commerce.

Please note that enterprise coverage does not apply to a private, non-profit enterprise where the
eleemosynary, religious or educational activities of the non-profit enterprise are not in substantial
competition with other businesses, unless it is operated in conjunction with a hospital, a residential
care facility, a school or a commercial enterprise operated for a business purpose. *See* Opinion
Letter dated December 13, 2004 (copy enclosed). Based on the information provided, it appears that
the local church you represent satisfies none of these tests and, thus, is not covered on an
enterprise basis. Further, a WHD opinion letter dated November 4, 1983 (copy enclosed) states that
"[g]enerally, enterprise coverage is not applicable to employees engaged in the operation
of a church or synagogue since their activities are not performed for a "business purpose" within the
meaning of FLSA." Further, a WHD opinion letter dated July 23, 1975 (copy enclosed) explicitly
states, "Coverage would *not* be applicable to church employees, such as a janitor, engaged
exclusively in the operation of the church since their activities are not performed for a business
purpose."

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com



U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

Employees of enterprises not covered under the FLSA may still be *individually covered* by the FLSA in any workweek in which they are engaged in interstate commerce, the production of goods for commerce or activities closely related and directly essential to the production of goods for commerce. Examples of such interstate commerce activities include making/receiving interstate telephone calls, shipping materials to another state and transporting persons or property to another state. See 29 C.F.R. § 770.11 (copy enclosed).

As a practical matter, the WHD will not assert that an employee who on isolated occasions spends an insubstantial amount of time performing individually covered work is individually covered by the FLSA. As stated in Field Operations Handbook 11a01 (copy enclosed), individual coverage will not be asserted for employees who occasionally devote insubstantial amounts of time to:

- Receiving/making interstate phone calls;
- Receiving/sending interstate mail or electronic communications;
- Making bookkeeping entries related to interstate commerce.

You posed a second question about calculating overtime for an employee simultaneously holding a salaried position and an hourly position. In this case, you stated that the duties of the salaried position would be culinary and the duties of the hourly position would be janitorial. The work for both positions would be conducted in the church building.

The November 4, 1983 opinion letter referred to above states that "[e]mployees of a church or synagogue are individually covered under FLSA where they regularly and recurrently use the telephone, telegraph, or the mails for interstate communication or receive, prepare, or send written material across state lines." It continues by stating, "[g]enerally, custodians would not be covered under FLSA on an individual basis unless the employees regularly clean offices of the church or synagogue where goods are regularly produced for shipment across state lines. A cook in a church or synagogue would not be covered on an individual basis unless the employee is ordering, receiving or preparing goods that are moving or will move in interstate commerce." Therefore, because the employee in question does not engage in these interstate activities, the employee would not be individually subject to the FLSA.

In light of all of the above information, it is our opinion that the church and the culinary and janitorial employees within it are not covered by the FLSA.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the questions presented. Existence of any other factual or historical background not contained in your request might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

17

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

We trust that the above information is responsive to your inquiry.

Sincerely,


Barbara Relerford
Office of Enforcement Policy
Fair Labor Standards Act Team

Enclosures:
FLSA § 3(i) & (s)
29 C.F.R. § 776.11
FOH 11a01
Opinion Letters dated December 13, 2004, November 4, 1983, and July 23, 1975


\* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. 552 (b)(7).

18

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com